UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

C.S., *individually, and as Next Friend
to Her Child, Y.S.*, *et al.*

                    Plaintiffs,

– *against* –

NEW YORK CITY DEPARTMENT OF
EDUCATION, THE BOARD OF
EDUCATION OF THE CITY SCHOOL
DISTRICT OF THE CITY OF NEW
YORK, CHANCELLOR DAVID
BANKS, *in his official capacity*, *and*
THE CITY OF NEW YORK,

                    Defendants.

---

**OPINION & ORDER**

24-cv-02111 (ER)

---

RAMOS, D.J.:

        This action was originally brought on behalf of 27 students[1] against the New

York City Department of Education ("DOE"), the Board of Education of the City School

District of the City of New York, Chancellor David Banks, in his official capacity, and

the City of New York (collectively "Defendants"), alleging, among other things, that

Defendants' failure to implement the final administrative orders that were issued in their

favor has denied Plaintiffs the educational services to which they were entitled to under

---

[1] The 27 students and their parents are C.S., individually, and as Next Friend to Her Child, Y.S., S.G., individually, and as Next Friend to Her Child, S.G., H.C., individually, and as Next Friend to Her Child, A.L., S.S., individually, and as Next Friend to Her Child, A.B., E.S., individually, and as Next Friend to Her Child, J.S., A.I., individually, and as Next Friend to Her Child, T.I., N.K., individually, and as Next Friend to His Child, J.K., R.F., individually, and as Next Friend to Her Child, D.G.F., F.F., individually, and as Next Friend to Her Child, Y.F., Y.A., individually, and as Next Friend to His Child, B.A., Z.A., individually, and as Next Friend to His Child, S.A., S.C., individually, and as Next Friend to Her Child, M.C., E.C., individually, and as Next Friend to His Child, R.C., C.F., individually, and as Next Friend to Her Child, Y.F.2, J.G., individually, and as Next Friend to Her Child, A.G., C.H., individually, and as Next Friend to Her Child, M.H., U.L., individually, and as Next Friend to His Child, M.L., K.E., individually, and as Next Friend to Her Child, G.E., R.G., individually, and as Next Friend to Her Child, S.G.2, L.S., individually, and as Next Friend to Her Child, J.L., M.N., individually, and as Next Friend to His Child, R.N., M.S., individually, and as Next Friend to Her Child, I.S., A.S., individually, and as Next Friend to His Child, E.S., R.S., individually, and as Next Friend to Her Child, D.B.S., V.T., individually, and as Next Friend to Her Child, D.S., Y.M., individually, and as Next Friend to Her Child, Y.T., and H.W., individually, and as Next Friend to Her Child, M.W.

the Individuals with Disabilities Education Act ("IDEA") and New York law in violation of 42 U.S.C. § 1983. Doc. 34 ¶¶ 374–387.[2] Seven student Plaintiffs remain.[3] Before the Court is Plaintiffs' motion for summary judgment, declaratory judgment, equitable remedies, attorneys' fees, and sanctions. Doc. 51. For the reasons stated below, the motion is DENIED.

## I.    BACKGROUND[4]

### A. Factual Background

S.A., Y.F.2, M.C., R.C., G.E., D.G.F., and T.I.—the seven remaining student Plaintiffs—are currently students at Reach for the Stars ("RFTS"), a private school that specializes in educating children with autism. Doc. 34 ¶ 65; Doc. 53 at 13–16; Doc. 61 at 6.[5] Plaintiffs initiated one or more administrative due process complaints seeking funding for the students' tuition and related services for the parents' unilateral placement at RFTS for the following three school years: 2021-2022, 2022-2023, and 2023-2024. Doc. 61 at 6.[6]

Prior to the 2021-2022 school year, RFTS operated pursuant to a tuition-based program, providing services through RFTS-Learning Center ("RFTS-LC"). Doc. 52-4 at

---

[2] The balance of the student Plaintiffs have resolved their claims with Defendants. Doc. 61 at 6. For these students, Defendants do not dispute that they are "entitled to funding for the services at issue according to the terms in the underlying administrative decisions" and explain that the DOE has "fulfilled its payment obligation with respect to each of the underlying administrative orders … issuing nearly $4,000,000 to RFTS in [2024]." *Id.* at 6–7.

[3] S.A., Y.F.2, M.C., R.C., G.E., D.G.F., and T.I., the remaining students, and their parents will be collectively referred to as Plaintiffs. Doc. 61 at 7.

[4] The following facts are drawn from the parties' Rule 56.1 statements, Docs. 54, 62, supporting exhibits, and pleadings, and are undisputed unless noted otherwise. Plaintiffs also filed a declaration with exhibits in their reply, specifically Individualized Educational Plans and Occupational Therapy Individualized Educational Plan Goals for S.A., R.C., and Y.F.2. *See* Doc. 71. The Court will not consider arguments based on these exhibits because "[i]t is well settled … that an argument [or issue] raised for the first time in a reply brief is waived." *Center for Independence of Disabled, New York v. Metropolitan Transportation Authority*, 2023 WL 5744408, at *6 (S.D.N.Y. Sept. 6, 2023); *see also Jackson Hole Burger, Inc. v. Estate of Galekovic*, 701 F. Supp. 3d 228, 232 (S.D.N.Y. 2023) ("[A]rguments raised for the first time on reply are waived.").

[5] The parties do not dispute that each Plaintiff has an eligible disability, specifically autism, under the IDEA. Doc. 62 ¶¶ 1–7, 9, 29, 40, 52, 62, 71, 80.

[6] Plaintiffs did not provide a due process complaint as part of the record before the Court. *See* Doc. 52.

18 n.16; Doc. 61 at 12.[7]  Beginning with the 2021-2022 school year, RFTS switched to a fee for services program, providing services through a different corporate entity, RFTS-Learning and Development ("RFTS-LD").  Doc. 52-4 at 18; Doc. 62 ¶ 25.[8]  RFTS' change from a tuition-based program to a fee for services program dramatically increased the tuition at RFTS.  *See e.g.*, Doc 52-4 at 17; Doc. 52-6 at 21; Doc. 52-10 at 2; Doc. 52-14 at 11.  Although Plaintiffs did not change schools, Defendants argue that the students' pendency placement changed when the parents contracted with RFTS-LD in and after the 2021-2022 school year as a result of the change of the corporate entity operating the school.  Doc. 61 at 7.[9]

    *1.  Student 1: S.A.*

S.A. attended RFTS-LD for the 2021-2022 and 2022-2023 school years.  Doc. 62 ¶¶ 16, 26.[10]  S.A's tuition for the 2021-2022 and 2022-2023 school years, respectively, was $315,775 and $327,809.  *Id.* ¶¶ 17, 26.  Defendants have not paid S.A's tuition for the 2021-2022 school year, but have paid $146,688 towards S.A's tuition for the 2022-2023 school year.  *Id.* ¶¶ 18, 27.  Plaintiffs allege that Defendants owe S.A. $315,775 for the 2021-2022 school year and $181,121 for the 2022-2023 school year.  *Id.* ¶¶ 18, 28.

---

[7] In their Rule 56.1 statement, Plaintiffs consistently do not distinguish between RFTS-LC and RFTS-LD.  *See* Doc. 54.  In addition, in their memorandum of law in support of their motion, Plaintiffs also do not distinguish between RFTS-LC and RFTS-LD.  *See* Doc. 53.  In fact, RFTS-LC is not referenced even once in the motion.  *Id.*  However, there is no dispute that RFTS started to provide services through RFTS-LD in the 2021-2022 school year.  *See* Doc. 62 ¶ 25.  Thus, for clarity, the Court will refer to RFTS as RFTS-LD when referring to the 2021-2022 and subsequent school years.

[8] One of the State Review Officer's decision as to S.A. notes that "[a]ccording to the RFTS-LD contract, RFTS-LD agreed to deliver special education and related services to the student at RFTS-LC."  Doc. 52-4 at 3 n.1.

[9] The parties dispute pendency entitlement as S.A., Y.F.2, M.C., R.C., G.E., D.G.F., and T.I.  Doc. 61 at 7.  The parties dispute pendency placement at RFTS-LD only as to S.A, Y.F.2, M.C., and R.C.  Doc. 62 ¶¶ 11, 31, 41, 63.  As to G.E., D.G.F., and T.I., the parties do not dispute that pendency is at RFTS-LD, but dispute that payments are owed.  *Id.* ¶¶ 53, 72, 81.

[10] RFTS-LD's special education program also includes related services and special transportation.  Doc. 62 ¶¶ 16, 37, 45, 49, 59, 68, 77, 91.  This applies to each Plaintiff, except G.E whose special program appears to not have included special transportation.  *See id.*

*a. 2021-2022 School Year*

On July 1, 2021, S.A.'s parents filed a due process complaint challenging the Individual Education Plan ("IEP") developed by Defendants, alleging a denial of a Free Appropriate Public Education ("FAPE"), and seeking funding at RFTS for the 2021-2022 school year. *Id.* ¶¶ 10–11; *see* Doc. 52-1.

On October 15, 2021, Defendants executed a pendency agreement agreeing that the S.A.'s pendency placement was pursuant to an unappealed Findings of Fact and Decision ("FOFD") dated April 21, 2020. Doc. 52-1; Doc. 60-2. The pendency agreement covered twelve months tuition for RFTS-LC from the date of the filing of the July 1, 2021 complaint. Doc. 52-1.[11]

The parties dispute whether S.A. has pendency at RFTS-LD for the 2021-2022 school year pursuant to the October 15, 2021 pendency agreement. Doc. 62 ¶ 11. Plaintiffs argue that (1) Defendants agreed to pay RFTS the tuition pursuant to the pendency agreement and (2) the pendency agreement is final and enforceable. Doc. 53 at 13. Defendants argue that there is no pendency at RFTS-LD because the pendency agreement explicitly notes that the pendency is at RFTS-LC, not RFTS-LD. Doc. 61 at 14; *see* Doc. 52-1. Defendants further explain that it was impossible for pendency to be at RFTS-LD pursuant to the April 21, 2020 FOFD, or from a related agreement in March 2021, because RFTS-LD did not come into existence until the 2021-2022 school year. Doc. 62 ¶ 11; *see* Docs. 52-1, 60-2, 60-3.

*b. 2022-2023 School Year*

On July 7, 2022, S.A.'s parents filed a due process complaint, seeking funding at RFTS for the 2022-2023 school year. Doc. 62 ¶ 19; Doc. 52-2.

On August 25, 2022, Defendants executed a pendency agreement agreeing that S.A.'s pendency placement was pursuant to the same April 21, 2020 FOFD referenced in the October 15, 2021 pendency agreement. *Id.* ¶ 20; Doc. 52-2. The pendency

---

[11] The parties did not provide any administrative decisions regarding the 2021-2022 school year as to S.A.

agreement covered twelve months of tuition for RFTS-LC from the date of filing the July 7, 2022 complaint.  Doc. 62 ¶ 21; Doc. 52-2.

On June 6, 2023, Impartial Hearing Officer ("IHO") Dora Lassinger issued an FOFD ordering that the DOE to "pay [RFTS-LC]  $146,688.00 … for the 2022-2023 school year, by June 20, 2023."  Doc. 52-3 at 18.  The tuition amount was based on the tuition charged in the 2020-2021 school year, with a cost of living adjustment.  *Id.*  The FOFD also found that "[n]o evidence was presented that the type of education provided by RFTS changed, when it changed its billing model."  *Id.* at 6.  The FOFD explained that RFTS "previously charged tuition, but changed its billing model, with no apparent change to the manner in which services were delivered" and that "the fee for services [model] is not credible [] and not reasonable."  *Id.* at 17–18.  Defendants appealed the FOFD to a State Review Officer ("SRO").  Doc. 62 ¶ 24.  On September 11, 2023, SRO Steven Krolak issued a decision, dismissing the appeal and stating as follows:

> As a final matter, in this instance, the district's argument that pendency is not warranted is without merit due the district's own actions during the pendency of this proceeding.  On August 25, 2022, the district agreed to fund pendency services at RFTS-LC. This was based on an April 21, 2020 finding of fact, which neither party asserted was appealed.  The unappealed decision found that RFTS-LC was an appropriate program for the student for the 2018-19 school year and ordered the district to fund the student's attendance at RFTS-LC for the 2018-19 school year.  The hearing record shows that RFTS-LD was not created until the 2021-22 school year when the educational programming at RFTS-LC switched to a fee for services program.  Accordingly, the student's pendency placement for the pendency of this proceeding was appropriately determined to be RFTS-LC.  It is noted that the district agreed to fund pendency services at RFTS-LC and as such, that is the student's pendency placement.  While the district contends that there is no contract with RFTS-LC, and the only contract in the hearing record is between the parents and RFTS-LD and the parents … all of the student's educational services were provided by RFTS-LC during the 2022-23 school year and RFTS-LC is the student's placement for the pendency of the proceeding.  Accordingly, the IHO's award of funding to RFTS-LC will not be changed on appeal.

Doc. 62 ¶ 25; Doc 52-4 at 18–19.  The SRO decision also concluded that the evidence presented supported the June 6, 2023 FOFD's (1) determination that RFTS-LC was appropriate for the 2022-2023 school year and (2) reduction of the award for funding of services under equitable considerations because "[t]he only change between the student's programming at RFTS-LC, when the school last operated under a tuition based model, and the program the student received during the 2022-23 school year was an increase in the cost of the student's educational programming, more than doubling it."  Doc 52-4 at 17, 19.[12]  Defendants did not appeal the SRO decision.  Doc. 62 ¶ 27.

The parties dispute whether S.A. has pendency at RFTS-LD for the 2022-2023 school year pursuant to the August 25, 2022 pendency agreement.  Doc. 62 ¶¶ 20–21. Plaintiffs argue that (1) Defendants agreed to pay RFTS the tuition pursuant to the pendency agreement and (2) the pendency agreement is final and enforceable.  Doc. 53 at 13.  Defendants argue that there is no pendency at RFTS-LD because the pendency agreement refers back to the April 21, 2020 FOFD, which explicitly notes that the pendency is at RFTS-LC.  Doc. 61 at 14.  Defendants further explain that S.A. does not have pendency at RFTS-LD because pendency never shifted to RFTS-LD prior to the filing of the July 7, 2022 complaint.  *Id.*

    *2.  Student 2: Y.F.2*

Y.F.2 attended RFTS-LD for the 2022-2023 school year.  Doc. 62 ¶ 68.  Y.F.2.'s tuition for that school year was $366,409.83.  *Id.* ¶ 69.  Defendants have not paid Y.F.2's tuition, and Plaintiffs allege that Defendants owe the entirety of that amount.  *Id.* ¶ 70.

On July 6, 2022, Y.F.2's parents filed a due process complaint challenging the IEP developed by Defendants, alleging a denial of a FAPE, and seeking funding at RFTS for the 2022-2023 school year.  *Id.* ¶¶ 63–64.

---

[12] The SRO decision also found that the evidence presented did not support overturning the June 6, 2023 FOFD finding that the rates charged by RFTS-LD were not credible.  Doc. 52-4 at 17.

On September 7, 2022, Defendants executed a pendency agreement agreeing that Y.F.2's pendency placement was pursuant to an unappealed FOFD dated September 16, 2014.  Doc 52-13; Doc. 60-5.  The pendency agreement covered twelve months of tuition for RFTS-LC from the date of filing the July 6, 2022 complaint.  Doc 52-13.

On May 10, 2023, IHO Diane Cohen issued an FOFD denying Y.F.2's parents' request for tuition at RFTS for the 2022-2023 school year.  Doc. 52-14 at 12.  The FOFD noted that Y.F.2's parents "have failed to meet their burden of proof that the program at [RFTS] is appropriate."  *Id.* at 9.  The FOFD also explained Y.F.2's parents signed an enrollment agreement on September 20, 2022 with RFTS-LD, but that "the hearing request asks for funding of their unilateral placement at RFTS[-]LC." *Id.* at 10.  The FOFD also "agree[d] with the DOE that the amount charged is exorbitant [and] [t]he increase from $128,000 in 2020-2021 to what could be high as $400,000 (or more) is outrageous."  *Id.* at 11.

The parties dispute whether Y.F.2 has pendency at RFTS-LD for the 2022-2023 school year pursuant to the September 7, 2022 pendency agreement.  Doc. 62 ¶ 63.  Plaintiffs argue that (1) Defendants agreed to pay RFTS the tuition pursuant to pendency agreement and (2) the pendency agreement is fully enforceable because Defendants did not appeal.  Doc. 53 at 14.  Defendants argue that Y.F.2 does not have pendency at RFTS-LD because the pendency agreement explicitly notes that pendency was at RFTS-LC based on the September 16, 2014 FOFD, awarding tuition and services at RFTS-LC.  Doc. 62 ¶ 63; *see* Doc. 52-13.  Defendants argue that since pendency was at RFTS-LC, pendency payments were never owed for the 2022-2023 school year because Y.F.2 was attending RFTS-LD.  Doc. 62 ¶ 63.

### 3.  *Student 3: M.C.*

M.C. attended RFTS-LD for the 2022-2023 school year.  *Id.* ¶ 37.  M.C.'s tuition for that school year was $281,884.20.  *Id.* ¶ 38.  Defendants have not paid M.C.'s tuition, and Plaintiffs allege that Defendants owe $151,884.20.  *Id.* ¶ 39.

On July 6, 2022, M.C.'s parents filed a due process complaint, challenging the IEP developed by Defendants, alleging a denial of a FAPE, and seeking funding at RFTS for the 2022-2023 school year. *Id.* ¶¶ 30–31.[13]

On October 6, 2022, IHO Theresa Joyner entered a pendency order[14] directing the DOE to continue funding placement at RFTS until a final decision and order is issued. Doc. 52-5 at 4.[15]

On June 15, 2023, IHO Ashley Grant issued an FOFD[16] ordering the DOE to fund the cost of M.C.'s placement directly to RFTS for the 2022-2023 school year in a total amount not to exceed $130,000[17]. Doc. 52-6 at 23.[18] Although the FOFD found that RFTS was appropriate for M.C., the FOFD also noted that RFTS' billing practices for the 2022-2023 school year "are highly unusual and result in a total cost that shocks the conscience." *Id.* at 21. The DOE appealed the June 15, 2023 FOFD. Doc. 52-7 at 1.

On September 20, 2023, SRO Sarah Harrington issued a decision modifying the October 6, 2022 pendency order "by reversing that portion which determined that the services-based program provided by RFTS-LD constituted the student's placement for the pendency of th[e] proceeding." Doc. 52-7 at 24. The decision found that M.C.'s placement had changed, specifically noting that "when the parents contracted with RFTS-

---

[13] Neither party provided a copy of a pendency agreement or referenced a pendency agreement as to M.C. Thus, it appears that Defendants did not execute a pendency agreement as to M.C.

[14] Defendants dispute that M.C. has a pendency claim at RFTS-LD for the 2022-2023 school year pursuant to a pendency agreement dated August 25, 2022. Doc. 62 ¶ 31. However, in supporting their argument disputing M.C.'s pendency claim, Defendants cite to a pendency agreement and other documents related to another Plaintiff altogether, S.A. *See id*; *see also* Doc. 60-2; Doc. 60-4.

[15] The pendency order refers to the school as RFTS and does not distinguish between RFTS-LD and RFTS-LC. Doc. 52-5.

[16] The FOFD also ordered the DOE to fund the cost of a paraprofessional and provide M.C. with special transportation, neuropsychological evaluation, and reconvene a CSE meeting. Doc. 52-6 at 23–24.

[17] The FOFD ordered $130,000 because it was roughly the amount equal to M.C.'s attendance during the last year in which RFTS charged flat tuition. Doc. 52-6 at 22.

[18] The FOFD redacts both M.C.'s name and the school name, so it is unclear if the FOFD specifies RFTS-LD or RFTS-LC. *See* Doc. 52-6. However, the FOFD does discuss RFTS' change from a tuition-based model to a fee for services model. *Id.* at 13.

LD for a services-based program … at a substantially higher cost than the student's prior program delivered by RFTS-LC, the parents rejected the pendency placement at RFTS-LC and the program provided by RFTS-LD was not required to be funded through pendency." *Id.* at 11–12.[19]

The parties dispute whether M.C. has pendency at RFTS-LD for the 2022-2023 school year. Doc. 61 at 15. Plaintiffs argue that (1) Defendants agreed to pay RFTS the tuition pursuant to the October 6, 2022 pendency order and (2) the pendency order is fully enforceable because Defendants did not appeal. Doc. 53 at 14–15. Defendants argue that the September 20, 2023 SRO decision already determined that there was no pendency at RFTS-LD for M.C. for the 2022-2023 school year. Doc. 61 at 15.

    *4. Student 4: R.C.*

R.C. attended RFTS-LD for the 2021-2022 and 2022-2023 school years. Doc. 62 ¶¶ 45, 49. R.C.'s tuition for the 2021-2022 and 2022-2023 school years was $346,657.00 and $425,518.90, respectively. *Id.* ¶¶ 46, 50. Defendants have not paid R.C.'s tuition for either year. *Id.* ¶¶ 47, 51. Plaintiffs allege that Defendants owe R.C. $346,657.00 for the 2021-2022 school year and $425,518.90 for the 2022-2023 school year. *Id.*

On August 5, 2019, R.C.'s parents filed a due process complaint challenging the IEP developed by Defendants, alleging a denial of a FAPE, and seeking funding at RFTS for the 2019-2020 school year. *See* Doc. 52-8.[20] There is no pendency agreement as to R.C. *See* Doc 52-10 at 2.

---

[19] Although the September 20, 2023 SRO decision notes that M.C.'s parents rejected pendency placement at RFTS-LC, the decision also notes that "the connection between RFTS-LC and RFTS-LD creates a somewhat unique situation under pendency, as the parents do not appear to have been seeking a change in the student's school placement." Doc. 52-7 at 10. The decision also notes that "the change from RFTS-LC to RFTS-LD—with the exception of the addition of a 1: 1 paraprofessional—appears to have been more of a shift in the way the school charged for services, inflating costs from $130,000.00 per year for the entire 2021-22 school year to $259,474.17 for a portion of the 2022-23 school year from July 2022 through April 20, 2023, rather than a change in the educational program being provided to the student." *Id.* at 11.

[20] Plaintiffs claim that R.C.'s parents filed a due process complaint alleging a denial of FAPE for the 2021-2022 school year, but the exhibit Plaintiffs provided to support this claim only discusses a due process complaint alleging a denial of the 2019-2022 school year, not the 2021-2022 school year. *See* Doc. 62 ¶ 41; Doc. 52-8.

On March 12, 2021, IHO James McKleever issued an FOFD granting R.C.'s parent's request for tuition reimbursement and/or direct payment to RFTS for the total cost of the tuition at RFTS for the 2019-2020 school year. *Id.*[21]

On July 28, 2021, IHO James McKleever issued a pendency order ordering Defendants to "continue[] to fund [R.C.'s] placement at [RFTS] … during the 2021-2022 school year until a final decision and order is issued in this matter. Pendency is retroactive to the date of the filing of the [complaint]." Doc. 52-9.[22]

On April 12, 2023, IHO James McKleever issued a pendency order[23] ordering the DOE to fund R.C.'s placement at RFTS pursuant to the 2018-2019 school year cost of tuition,[24] and that "[p]endency is retroactive to date of the [complaint] and shall continue until a final [d]ecision and [o]rder is issued in the matter." Doc 52-10 at 3.[25] The order acknowledged that the "DOE did not provide [R.C.'s parent] with a pendency agreement and objected to pendency because [RFTS] modified its tuition-based model to a 'service based' fee structure, which increased the cost of the student's program by over 300%, approximately." *Id.* at 2. The order found that "the evidence shows that the last agreed upon placement … was for the 2018-2019 school," which was RFTS-LC, and that RFTS' change "from [a] tuition-based model to an hourly service model, which increased the cost of [R.C.'s] placement from by more than 300 percent, is disingenuous and significantly altered [R.C.'s] placement that it would not constitute the 'last agreed upon' placement." *Id.* at 3.

---

[21] The pendency order refers to the school as RFTS and does not distinguish between RFTS-LD and RFTS-LC. Doc. 52-8.

[22] The pendency order refers to the school as RFTS and does not distinguish between RFTS-LD and RFTS-LC. Doc. 52-9.

[23] The pendency order also notes that "last agreed upon placement was the unappealed FOFD, dated October 5, 2021, which was for the 2018-2019 school …[and] that pendency lies in [that] FOFD." Doc 52-10 at 3. However, neither party includes this FOFD as an exhibit to their Rule 56.1 statements.

[24] The order does not specify how much the 2018-2019 school year cost of tuition was. Doc. 52-10.

[25] The pendency order refers to the school as RFTS and does not distinguish between RFTS-LD and RFTS-LC. Doc. 52-9.

The parties dispute whether R.C. has pendency at RFTS-LD for the 2021-2022 and 2022-2023 school years pursuant to the July 28, 2021 pendency order.  Doc. 62 ¶ 41. Plaintiffs argue that (1) Defendants agreed to pay RFTS the tuition pursuant to the pendency order and (2) the pendency order is fully enforceable because Defendants did not appeal.  Doc. 53 at 15–16.  Defendants argue that R.C. does not have a pendency at RFTS-LD because the pendency order specifically ordered funding at RFTS pursuant to the March 12, 2021 FOFD, which ordered funding for RFTS-LC for the 2019-2020 school year.  Doc. 62 ¶ 41.  Defendants explain that it is impossible for the pendency placement to be RFTS-LD because R.C. did not begin at RFTS-LD until the 2021-2022 school year, so pendency did not automatically transfer upon R.C.'s enrollment at RFTS-LD.  *Id.*

5.  *Student 5: G.E.*

G.E. attended RFTS-LD for 2022-2023 school year.  *Id.* ¶ 59.  G.E.'s tuition for the 2022-2023 school year was $348,568.30.  *Id.* ¶ 60.  Plaintiffs allege that Defendants owe G.E. $162,900.80 for that school year.  *Id.* ¶ 61.  Defendants claim that they have fully paid for invoices received and note that the DOE has not received invoices for February 2023 through June 2023.  *Id.* ¶ 53.

On September 7, 2022, G.E.'s parents filed a due process complaint challenging the IEP developed by Defendants, alleging a denial of a FAPE, and seeking funding at RFTS for the 2022-2023 school year.  *Id.* ¶¶ 53–54; *see* Doc. 52-11.

On October 28, 2022, Defendants executed a pendency agreement agreeing that G.E.'s pendency placement was pursuant to an unappealed FOFD dated September 23, 2021.  Doc. 52-11.  The pendency agreement covered ten months of tuition for RFTS, from the date of filing the September 7, 2022 complaint.  *Id.*[26]

---

[26] The pendency agreement refers to the school as RFTS and does not distinguish between RFTS-LD and RFTS-LC.  Doc. 52-11.

On November 8, 2023, IHO James Polk issued a pendency order ordering Defendants to pay for G.E.'s services at RFTS-LD, retroactive to the filing of the September 7, 2022 complaint.  Doc. 52-12.

Defendants do not dispute that G.E. has pendency at RFTS-LD for the 2022-2023 school year because the November 8, 2023 pendency order specified that G.E. has pendency at RFTS-LD.  Doc. 62 ¶ 53.  Defendants further explain that the DOE has fully paid for invoices received and that the DOE has not received invoices for February 2023 through June 2023.  *Id.*

### 6.  *Student 6: D.G.F.*[27]

D.G.F. attended RFTS-LD for the 2022-2023 school year.  *Id.* ¶ 77.  D.G.F.'s tuition for that school year was $368,346.00.  *Id.* ¶ 78.  Plaintiffs allege that Defendants owe D.G.F. $76,195.20.  *Id.*  Defendants claim that the DOE has paid a total of $292,151.13 based on invoices provided from September 15, 2022 through June 2023. *Id.* ¶ 72.

On July 1, 2022, D.G.F.'s parents filed a due process complaint challenging the IEP developed by Defendants, alleging a denial of a FAPE, and seeking funding at RFTS for the 2022-2023 school year.  *Id.* ¶¶ 72–73.

On August 31, 2022, Defendants executed a pendency agreement agreeing that D.G.F.'s pendency placement was pursuant to an unappealed FOFD dated April 17, 2020.  Doc 52-15.  The pendency agreement covered twelve months of tuition for RFTS-LC from the date of filing the July 1, 2022 complaint.  *Id.*

---

[27] In Plaintiffs' memorandum of law in support of their motion, they allege that D.G.F.'s pendency placement at RFTS-LD for the 2022-2023 school year is pursuant to a pendency order dated October 2, 2023, which is not included as an exhibit.  Doc. 53 at 15.  However, Defendants note that the due process complaint related to the October 2, 2023 pendency order was filed on July 1, 2023 and that pendency only applies during the pendency of the claim.  *See* Doc. 60-9.  Defendants explain that pendency pursuant to a due process complaint filed on July 1, 2023 would not apply to the 2022-2023 school year.  Doc. 62 ¶ 72.

On September 15, 2022, IHO Susan Barbour issued an FOFD ordering funding for RFTS for the 2021-2022 school year. Doc. 60-11 at 18.[28]

On June 16, 2023, IHO Susan Barbour issued a termination order, noting that the D.G.F.'s parents withdrew the July 1, 2022 complaint. Doc. 60-10.

Defendants do not dispute that D.G.F. has pendency at RFTS-LD for the 2021-2022 school year. Doc. 62 ¶ 72. Defendants further explain that the DOE has paid for invoices provided from September 15, 2022 through June 2023. *Id.*

### 7. *Student 7: T.I.*

T.I. attended RFTS-LD for the 2022-2023 school year. *Id.* ¶ 91. T.I.'s tuition for the 2022-2023 school year was $340,727.99. *Id.* ¶ 92. Plaintiffs allege that Defendants owe T.I. $77,749.16. *Id.* ¶ 93. Defendants claim that all pendency payments have been made. *Id.*[29]

On July 7, 2022, T.I.'s parents filed a due process complaint challenging the IEP developed by Defendants, alleging a denial of a FAPE, and seeking funding at RFTS for the 2022-2023 school year. *Id.* ¶¶ 81–82.

On October 18, 2022, Defendants executed a pendency agreement agreeing that T.I.'s pendency placement was pursuant to an unappealed FOFD dated April 22, 2022. Doc 52-16. The pendency agreement covered twelve months of tuition for RFTS-LC from the date of filing the July 7, 2022 complaint. *Id.*

On April 5, 2023, IHO Diane Cohen issued a pendency order finding that the last agreed upon placement was RFTS-LC, as set forth in the April 22, 2022 FOFD, and ordering that RFTS-LC's program will constitute T.I.'s program "as of January 20, 2023, and throughout the pendency of these proceedings." *See* Doc. 52-17.

---

[28] The FOFD refers to the school as RFTS and does not distinguish between RFTS-LD and RFTS-LC. Doc. 60-11.

[29] It is unclear how much Defendants claim to have paid. Doc. 62 ¶ 93.

On August 1, 2023, IHO Diane Cohen issued an FOFD finding that the program at RFTS-LC was inappropriate and denying the request to award tuition funding. Doc. 52-18 at 23. Plaintiffs appealed the IHO's determination to the SRO, and Defendants cross-appealed. Doc. 62 ¶ 88.

On November 17, 2023, SRO Sarah Harrington issued a decision ordering that August 1, 2023 FOFD "is modified by reversing those portions which found that the unilateral placement of the student at RFTS for the 2022-23 school year was inappropriate for [T.I.] and denied the parents' request for district funding of the costs of the unilateral placement" and ordered that "the district shall fund the costs of the student's unilateral placement at RFTS for the 2022-23 school year, in an amount not to exceed $172,300." Doc. 52-19 at 26.[30] SRO Harrington also dismissed Defendants' cross-appeal. *Id.*

The parties do not dispute that T.I. has pendency at RFTS-LD for the 2022-2023 school year. Doc. 62 ¶ 81. Defendants explain that the DOE has fully paid for services invoiced for the 2022-2023 school year. *Id.*

* * *

The parties dispute whether four of the Plaintiffs, S.A, Y.F.2, M.C., and R.C., have pendency at RFTS-LD. *Id.* ¶¶ 11, 31, 41, 63. Although the parties do not dispute that G.E., D.G.F., and T.I. have pendency at RFTS-LD, the parties dispute whether payments are owed. *Id.* ¶¶ 53, 72, 81.

### B. Procedural History

On March 20, 2024, Plaintiffs[31] filed a complaint alleging, among other things, that Defendants' failure to implement the final administrative orders that were issued in

---

[30] The decision refers to the school as RFTS and does not distinguish between RFTS-LD and RFTS-LC. Doc. 52-19.

[31] Plaintiffs included C.S., individually, and as Next Friend to Her Child, Y.S., S.G., individually, and as Next Friend to Her Child, S.G., H.C., individually, and as Next Friend to Her Child, A.L., S.S., individually, and as Next Friend to Her Child, A.B., E.S., individually, and as Next Friend to Her Child, J.S., A.I., individually, and as Next Friend to Her Child, T.I., N.K., individually, and as Next Friend to His

their favor denied Plaintiffs the education services to which they are entitled under the IDEA and New York law in violation of 42 U.S.C. § 1983.  Doc. 1 ¶¶ 147–159.  The complaint also requested that the Court issue a preliminary injunction and enter judgment against Defendants.  *Id.* at 21–22.  That same day, Plaintiffs also filed a corresponding motion for preliminary injunction.  Doc. 5.

On May 13, 2024, Plaintiffs filed an amended complaint, adding additional plaintiffs.  Doc. 34.  On August 1, 2024, Plaintiffs filed the instant motion for summary judgment.  Doc. 51.  On September 13, 2024, at a conference, the Court denied Plaintiffs' motions for preliminary injunction and for sanctions.  Doc. 66.

Plaintiffs move for summary judgment, declaratory judgment, equitable remedies, attorneys' fees, and sanctions.  Doc. 51.  The Court will discuss each in turn.

## II.    DISCUSSION

### A.  Summary Judgment

#### 1.  Legal Standard

Congress passed the IDEA "to ensure that all children with disabilities have available to them a [FAPE] that emphasizes special education and related services designed to meet their unique needs and prepare them for further education, employment, and independent living."  20 U.S.C. § 1400(d)(1)(A).  It defines FAPE as "appropriate preschool, elementary school, or secondary school education," "provided at public expense, under public supervision and direction, and without charge," and "in conformity with the [IEP] required under section 1414(d)."  *Id.* § 1401(9).  The statute further mandates that the FAPE "meet the standards of the State educational agency."  *Id.*

As part of a child's FAPE, "the IDEA provides for the creation of an IEP."  *Board of Education of Pawling Central School District v. Schutz*, 290 F.3d 476, 481 (2d Cir. 2002).  The IEP includes, among other things, "a statement of the child's present levels of

---

Child, J.K., R.F., individually, and as Next Friend to Her Child, D.F., and F.F., individually, and as Next Friend to Her Child, Y.F.

academic achievement and functional performance," "a statement of measurable annual goals," and "a description of how the child's progress toward meeting the annual goals . . . will be measured."  20 U.S.C. § 1414(d)(1)(A)(i).  "Congress repeatedly emphasized throughout the Act the importance and indeed the necessity of parental participation in both the development of the IEP and any subsequent assessments of its effectiveness." *Honig v. Doe*, 484 U.S. 305, 311 (1988).  As a result, states must allow parents "to seek review of any decisions they think inappropriate."  *Id.* at 312.

In New York, parents may seek such review by requesting an "impartial due process hearing" before an IHO.  N.Y. Educ. Law § 4404(1).  If they are unsatisfied with the IHO's decision, they can appeal the decision to a SRO.  *Id.* § 4404(2).  "The SRO's decision is final[ ] and concludes the state administrative review."  *Schutz*, 290 F.3d at 481.  "Upon issuance of a final administrative decision, however, a dissatisfied party has the right to bring a civil action in either federal or state court pursuant to the IDEA."  *Id.*

"Though the parties in an IDEA action may call the procedure a motion for summary judgment, the procedure is in substance an appeal from an administrative determination, not a summary judgment."  *Lillbask ex rel. Mauclaire v. Connecticut Department of Education*, 397 F.3d 77, 83 n.3 (2d Cir. 2005) (alterations and internal quotation marks omitted); *see C.U. v. New York City Department of Education*, 23 F. Supp. 3d 210, 222 (S.D.N.Y. 2014).  While an IDEA appeal is in the form of a summary judgment motion, the existence of a genuine issue of material fact will not result in a denial.  *J.R. ex rel. S.R. v. Board of Education*, 345 F. Supp. 2d 386, 394 (S.D.N.Y. 2004).  Instead, a federal court reviewing an administrative decision under the IDEA bases its decision on an independent review of the record using a "preponderance of the evidence" standard.  *Board of Education of Hendrick Hudson Central School District, Westchester County v. Rowley*, 458 U.S. 176, 205 (1982).  In reviewing an IDEA action, the Second Circuit has held that "[w]hile federal courts do not simply rubber stamp administrative decisions, they are expected to give due weight to these proceedings,

mindful that the judiciary generally lack[s] the specialized knowledge and experience necessary to resolve persistent and difficult questions of educational policy." *Sherman v. Mamaroneck Union Free School District*, 340 F.3d 87, 93 (2d Cir. 2003) (internal quotation marks omitted) (quoting *Walczak v. Florida Union Free School District*, 142 F.3d 119, 129 (2d Cir. 1998)).

A district court must conduct an independent review of the record and exercise its own judgment in deciding whether to grant tuition reimbursement, but it also must give due deference to the decisions of the experts below. *Bettinger v. New York City Board of Education*, No. 06-cv-6889 (PAC), 2007 WL 4208560, at *4 (S.D.N.Y. Nov. 20, 2007). "[C]ourts may not 'substitute their own notions of sound educational policy for those of the school authorities which they review.'" *T.Y. ex rel. T.Y. v. New York City Department of Education*, 584 F.3d 412, 417 (2d Cir. 2009) (quoting *Rowley*, 458 U.S. at 206). Nor may the courts make subjective credibility assessments or weigh the testimony of educational experts when the state authorities have already performed these functions. *M.H. v. New York City Department of Education*, 685 F.3d 217, 240 (2d Cir. 2012). In this way, "the role of federal courts in reviewing state educational decisions under the IDEA is 'circumscribed.'" *Id.* (quoting *Gagliardo v. Arlington Central School District*, 489 F.3d 105, 112 (2d Cir. 2007)). Generally, either "party aggrieved" by the findings of the SRO "shall have the right to bring a civil action" in either state or federal court. 20 U.S.C. § 1415(i)(2)(A). When such an action is brought in federal district court, the court reviews the records of all of the prior administrative hearings and must hear additional evidence if so requested by either of the parties. *Id.* § 1415(i)(2)(C).

At issue in these cases is the IDEA's so-called "pendency" or "stay-put" provision. The IDEA provides that, "during the pendency of any proceedings conducted pursuant to this section, unless the State or local educational agency and the parents otherwise agree, the child shall remain in the then-current educational placement of the child." 20 U.S.C. § 1415(j). The purpose of the pendency provision is "to provide

stability and consistency in the education of a student with a disability." *Arlington Central School District v. L.P.*, 421 F. Supp. 2d 692, 696 (S.D.N.Y. 2006) (citing *Honig v. Doe*, 484 U.S. 305 (1988)).

The IDEA's pendency provision is effectively "an automatic preliminary injunction." *Zvi D. v. Ambach*, 694 F.2d 904, 906 (2d Cir. 1982). "The statute substitutes an absolute rule in favor of the status quo for the court's discretionary consideration of the factors of irreparable harm and either a likelihood of success on the merits or a fair ground for litigation and a balance of hardships." *Id.*

"The term 'then-current educational placement' in the stay-put provision typically refers to the child's last agreed-upon educational program before the parent requested a due process hearing to challenge the child's IEP." *Ventura de Paulino v. New York City Department of Education*, 959 F.3d 519, 532 (2d Cir. 2020) (emphasis and citation omitted). To determine a child's "then-current educational placement," Second Circuit courts consider: "(1) the placement described in the child's most recently implemented IEP; (2) the operative placement actually functioning at the time when the stay put provision of the IDEA was invoked; or (3) the placement at the time of the previously implemented IEP." *Doe v. East Lyme Board of Education*, 790 F.3d 440, 452 (2d Cir. 2015) (internal quotation marks and citations omitted).

In addition, according to the plain language of the IDEA, the DOE and parents can "otherwise agree" to modify a student's pendency placement at any time, including during a hearing. 20 U.S.C. § 1415 (j); *see Ventura de Paulino*, 959 F.3d at 531. A new agreement will supersede pendency created by an IEP, regardless of whether the agreement is memorialized in a new IEP. *L.P.*, 421 F. Supp. 2d at 697. A final administrative decision in favor of a parent's placement creates a de jure agreement establishing pendency in the final decision. *Schutz*, 290 F.3d at 484; *see also Ventura de Paulino*, 959 F.3d at 532. An IHO's interim order may also serve as the basis of the student's pendency placement in some specific circumstances. *See Avaras v. Clarkstown*

*Central School District*, No. 15-cv-9679 (NSR), 2018 WL 4103494, at *5 (S.D.N.Y. Aug. 28, 2018) (finding that an IHO interim order established the student's last agreed-upon placement under the IDEA).

"Parents who are dissatisfied with their child's education can unilaterally change their child's placement during the pendency of review proceedings and can, for example, pay for private services, including private schooling." *Ventura de Paulino*, 959 F.3d at 526 (internal quotation marks and citations omitted). However, the Supreme Court has held that "parents who unilaterally change their child's placement during the pendency of review proceedings, without the consent of state or local school officials, do so at their own financial risk." *School Committee of Town of Burlington, Massachusetts v. Department of Education of Massachusetts*, 471 U.S. 359, 373–74 (1985). After the IEP dispute is resolved, parents may obtain "retroactive reimbursement" from the school district if: "(1) the school district's proposed placement violated the IDEA by, for example, denying a FAPE to the student because the IEP was inadequate; (2) the parents' alternative private placement was appropriate; and (3) equitable considerations favor reimbursement." *Ventura de Paulino*, 959 F.3d at 526–27 (citation and internal quotation marks omitted).

### 2. Analysis[32]

Plaintiffs request summary judgment to immediately enforce the administrative orders and pendency agreements that require Defendants to pay the outstanding tuition costs for their respective children's special education program at RFTS. Doc. 52 at 1; Doc. 71 at 1.

Plaintiffs argue that Defendants are required to fully fund Plaintiffs' tuition at RFTS during the due process proceedings because Plaintiffs have pendency placements

---

[32] The parties only dispute pendency entitlement for S.A., Y.F.2, M.C., R.C., G.E., D.G.F., and T.I. Doc. 61 at 7. As to S.A, Y.F.2, M.C., and R.C., the parties dispute pendency placement at RFTS-LD. Doc. 62 ¶¶ 11, 31, 41, 63. As to G.E., D.G.F., and T.I., the parties do not dispute that pendency is at RFTS-LD, but dispute that payments are owed. *Id.* ¶¶ 53, 72, 81.

at RFTS based on enforceable pendency agreements entered into voluntarily, or unappealed pendency orders.  Doc. 53 at 12, 22.  Plaintiffs also explain that the appropriateness of the placement, its costs, and the costs of related services are all subjects that can be raised—or waived—during the due process proceedings.  *Id.* at 24.[33]

Defendants argue that payments are not owed to Plaintiffs because—at least as to S.A., Y.F.2, M.C., and R.C.—the plain language of the pendency agreements or prior administrative orders require Defendants "to fully fund [Plaintiffs'] tuition … during the pendency of their due process proceedings [] at RFTS-LC," not RFTS-LD.  Doc. 61 at 12.  Defendants explain that when the parents unilaterally signed contracts with RFTS-LD, at a substantially higher cost than the students' prior programs delivered by RFTS-LD, Plaintiffs effectively rejected the pendency placement at RFTS-LC.  *Id.*

    a.   *S.A., Y.F.2, M.C., and R.C.*

Here, the primary dispute is whether the students' pendency placements specifying "RFTS-LC" or "RFTS" apply to RFTS-LD.  The Court will discuss each student in turn.

    1.   *S.A.*[34]

The parties dispute whether S.A. has pendency at RFTS-LD for the 2021-2022 and 2022-2023 school years.  Doc. 62 ¶¶ 11, 20.  The two relevant pendency agreements specifically noted that pendency was at RFTS-LC, not RFTS-LD, and was based on the April 21, 2020 FOFD.  *See* Doc. 52-1; Doc. 52-2.  In addition, although the  September

---

[33] In its memorandum of law in support of its motion for summary judgment, as in their Rule 56.1 statement, Plaintiffs did not address or even acknowledge the change from RFTS-LC to RFTS-LD, starting with the 2021-2022 school year.  *See* Doc. 53; Doc. 54.  In fact, RFTS-LC is not referenced even once in the motion.  *Id.*  Plaintiffs only addressed this change in their reply.  *See* Doc. 70 at 7–15.  Plaintiffs argue for the first time in their reply that Defendants are obligated to fund students' tuition under 20 U.S.C. § 1415(j) regardless of a change in company structure or cost.  Doc. 70 at 7.  Plaintiffs also argue for the first time in their reply that Defendants' obligation to pay tuition for RFTS is unchanged because (1) RFTS-LC and RFTS-LD are the same educational placement for purposes of pendency under the IDEA and (2) the educational program is the same.  *Id.* at 13.  The Court will not consider these arguments because "[i]t is well settled … that an argument raised for the first time in a reply brief is waived."  *Center for Independence of Disabled*, 2023 WL 5744408, at *6; *see also Jackson Hole Burger*, 701 F. Supp. 3d at 232.

[34] The Court will consider the June 6, 2023 FOFD as applicable to both 2021-2022 and 2022-2023 school years.

11, 2023 SRO decision determined that "all of S.A.'s educational services were provided by RFTS-LC during the 2022-2023 school [so] RFTS-LC is the student's placement for pendency of the proceeding," the decision also agreed with the June 6, 2023 FOFD which reduced the rate charged for S.A's tuition.  Doc. 52-4 at 17–19.  The decision specifically noted that "[t]he only change between the student's [program] at RFTS-LC … and the program the student received during the 2022-23 school year was an increase in the cost of the student's educational programming, more than doubling it."  *Id.* at 17.  The decision also found that the evidence presented did not support overturning the FOFD's finding that the rates charged by RFTS-LD were not "credible."  *Id.*

The Court determines, based on the preponderance of evidence and in accordance with the September 11, 2023 SRO decision, that S.A.'s pendency placement changed when RFTS changed to a fee for services program and that S.A.'s "then-current educational placement" was RFTS-LC because it was the last agreed upon placement by the parties.  *East Lyme Board of Education*, 790 F.3d at 452; *see id.*  Here, S.A.'s pendency placement changed when the parents unilaterally contracted with RFTS-LD for a services-based program at a substantially higher cost than the student's prior program delivered by RFTS-LC.  *See also* Doc. 52-7 at 24; Doc. 52-10 at 3; Doc. 52-14 at 11.  Thus, S.A has no pendency at RFTS-LD for the 2021-2022 and 2022-2023 school years.

*2. Y.F.2*

The parties dispute whether Y.F.2 has pendency at RFTS-LD for the 2022-2023 school year.  Doc. 61 at 15.  The relevant pendency agreement specifically noted that pendency was at RFTS-LC, not RFTS-LD, and was based on the September 16, 2014 FOFD.  *See* Doc. 52-13.  In addition, the May 10, 2023 FOFD denied Y.F.2's parents' request for tuition funding at RFTS for the 2022-2023 school year for various reasons, including that (1) Y.F.2's parents failed to meet their burden of proof that the program at RFTS is appropriate and (2) "the amount charged is exorbitant [and] [t]he increase from

21

$128,000 in 2020-2021 to what could be high as $400,000 (or more) is outrageous." Doc. 52-14 at 9, 11–12.

The Court determines, based on the preponderance of evidence and in accordance with the May 10, 2023 FOFD, that Y.F.2's pendency placement changed when RFTS changed to a fee for services program and that Y.F.2's "then-current educational placement" was RFTS-LC because it was the last agreed upon placement by the parties. *East Lyme Board of Education*, 790 F.3d at 452; *see id*.  Here, Y.F.2's pendency placement changed when Y.F.2's parents unilaterally contracted with RFTS-LD at a substantially higher cost than the student's prior program delivered by RFTS-LC.  *See also* Doc. 52-7 at 24; Doc. 52-10 at 3.  Additionally, the Court also finds that Y.F.2's parents failed to prove that RFTS-LD was appropriate.  *See Ventura de Paulino*, 959 F.3d at 526–27.  Thus, Y.F.2 has no pendency at RFTS-LD for the 2022-2023 school year.

### 3.  M.C.

The parties dispute whether M.C. has pendency at RFTS-LD for the 2022-2023 school year.  Doc. 61 at 15.[35]  The September 20, 2023 SRO decision clearly determined that there was no pendency at RFTS-LD for M.C. for the 2022-2023 school year because RFTS changed to a services-based program.  Doc. 52-7 at 25.  The decision specifically noted that "when the parents contracted with RFTS-LD for a services-based program … at a substantially higher cost than the student's prior program delivered by RFTS-LC, the parents rejected the pendency placement at RFTS-LC and the program provided by RFTS-LD was not required to be funded through pendency."  *Id.* at 11–12.

The Court determines, based on the preponderance of evidence and in accordance with the September 20, 2023 SRO decision, that M.C.'s pendency placement changed when RFTS changed to a fee for services program and that M.C.'s "then-current educational placement" was RFTS-LC because it was the last agreed upon placement by

---

[35] Since neither party provided a copy of the agreement or referenced a pendency agreement as to M.C., it appears that Defendants did not execute a pendency agreement as to M.C.

the parties. *East Lyme Board of Education*, 790 F.3d at 452; *see id.* Here, M.C.'s pendency placement changed when M.C.'s parents unilaterally contracted with RFTS-LD at a substantially higher cost than the student's prior program delivered by RFTS-LC. *See also* Doc. 52-10 at 3; Doc. 52-14 at 11. Thus, M.C. has no pendency at RFTS-LD for the 2022-2023 school year.

    *4. R.C.*

    The parties dispute whether R.C. has pendency at RFTS-LD for the 2021-2022 and 2022-2023 school years. Doc. 62 ¶¶ 41–42, 50–51.[36] The April 12, 2023 pendency order  explained that RFTS' change from "from tuition-based model to an hourly service model, which increased the cost of [R.C.'s] placement from by more than 300 percent, is disingenuous and significantly altered [R.C.'s] placement that it would not constitute the 'last agreed upon' placement." Doc. 52-10 at 3. However, the pendency order also ordered the DOE to fund R.C.'s placement at RFTS pursuant to the 2018-2019 school year cost of tuition, and that "[p]endency is retroactive to date of the [complaint] and shall continue until a final [d]ecision and [o]rder is issued in the matter." Doc 52-10  at 3.

    The Court determines, based on the preponderance of evidence and in accordance with the April 12, 2023 pendency order, that R.C.'s pendency placement changed when RFTS changed to a fee for services program and that R.C.'s "then-current educational placement" was RFTS-LC because it was the last agreed upon placement by the parties. *East Lyme Board of Education*, 790 F.3d at 452; *see id.* Here, R.C.'s pendency placement changed when R.C.'s parents unilaterally contracted with RFTS-LD at a substantially higher cost than the student's prior program delivered by RFTS-LC. *See*

---

[36] Defendants never executed a pendency agreement as to R.C. because they objected to the fact that RFTS switched to "a 'service based' fee structure, which increased the cost of the student's program by over 300%." Doc. 52-10 at 2.

*also* Doc. 52-7 at 24; Doc. 52-14 at 11.  Thus, R.C. has no pendency at RFTS-LD for the 2021-2022 and 2022-2023 school years.

* * *

Accordingly, the Court denies the motion for summary judgment as to S.A, Y.F.2, M.C, and R.C.

### b.  G.E., D.G.F, and T.I.

The parties do not dispute that pendency for G.E., D.G.F., and T.I. is at RFTS-LD for the relevant school years.  Doc. 62 ¶¶ 53, 72, 81.  However, the parties dispute whether all the pendency payments have been made.  *Id.* ¶¶ 61, 79, 93.  Defendants claim that Plaintiffs have not provided certain necessary documentation for G.E. and D.G.F. to process the pendency payments, and have otherwise made all of the payments for which they received invoices.  *Id.* ¶¶ 53, 61, 72, 79.  Defendants claim that as to T.I., they have made full payment for services invoiced for 2022-2023 school year.  *Id.* ¶ 81.  Here, the parties did not submit any payment information, so the Court cannot assess whether pendency payments are missing.  Accordingly, since there is a genuine issue of material fact as to the payments to G.E., D.G.F., and T.I., the Court denies the motion for summary judgment as to G.E., D.G.F., and T.I.

### B.  Declaratory Judgment

### 1.  Legal Standard

The Declaratory Judgment Act provides that "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.  Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such."  28 U.S.C. § 2201(a).  In other words, the statute requires (1) an actual controversy within the Court's jurisdiction; (2) a pleading requesting a declaratory judgment; and (3) an interested party seeking a declaration.

The "actual controversy" requirement is coextensive with the "case" or "controversy" requirement in Article III, Section 2, of the Constitution. *See Aetna Life Insurance Company of Hartford, Connecticut v. Haworth*, 300 U.S. 227, 239–40 (1937) (explaining that "cases of actual controversy" refers to "the constitutional provision and is operative only in respect to controversies which are such in the constitutional sense"). In other words, the "actual controversy" requirement "does not impose a higher threshold for justiciability than the basic Article III requirement that federal courts shall only decide cases or controversies." *East/West Venture v. Wurmfeld Associates, P.C.*, 722 F. Supp. 1064, 1067 (S.D.N.Y. 1989).

To establish an actual case or controversy, "a plaintiff must demonstrate that (1) he or she has suffered an injury; (2) the injury is traceable to the defendants' conduct; and (3) a federal court decision is likely to redress the injury." *Rolle v. Girardi*, 689 F. App'x 64, 65 (2d Cir. 2017) (quoting *Deshawn E. by Charlotte E. v. Safir*, 156 F.3d 340, 344 (2d Cir. 1998)).

  2. *Analysis*

Plaintiffs request that the Court declare that Defendants violated Plaintiffs' rights and that they are the prevailing parties. Doc. 53 at 29.[37] Plaintiffs argue that they have demonstrated the existence of an "actual controversy" because the harm suffered will continue into the future. *Id.* Plaintiffs specifically argue that the harm will continue into the future because Defendants' (1) "persistent failure to provide [a] FAPE to children with [a]utism will necessitate due process proceedings" and (2) "past policies, procedures, and practices, as reflected by … lawsuits complaining and evidencing Defendants' … delays in making tuition [payments] … will inevitably require either

---

[37] Plaintiffs also argue that the Court should declare that Plaintiffs are the prevailing party regardless of the outcome of the preliminary injunction. Doc. 53 at 27. After the instant motion was filed, but before the reply was filed, at a conference on September 13, 2024, the Court denied the motion for preliminary injunction. Doc. 66. Plaintiffs did not address the motion for declaratory judgment in their reply. Doc. 70. Plaintiffs appear to not have addressed the motion for declaratory judgment because their motion for preliminary injunction was denied.

enforcement litigation or exhaustive communications with the [DOE's] Implementation Unit demanding timely payment without success." *Id.* at 28–29.

Defendants argue that Plaintiffs cannot demonstrate that they have suffered a harm in the past or that they are likely to suffer a future harm. Doc. 61 at 17–18. Defendants explain that the DOE has fulfilled its obligations pursuant to the underlying administrative orders and that for pendency payments that Plaintiffs claim Defendants' owe, "Defendants' position [is] that payment was never owed." *Id.* at 18–19. Defendants further note that "the DOE must be afforded time to process payments pursuant to 'ordinary payments procedures[,] [which] comports with the practical realities of bureaucratic administration'" and that "the change in RFTS' billing practices and creation of the for-profit entity RFTS-LD … greatly augmented the need for the DOE to comport with the 'practical realities of bureaucratic administration.'" *Id.* at 18 (citing *Mendez v. Banks*, 65 F.4th 56, 63 (2d. Cir. 2023)).

Here, Plaintiffs have not shown they are likely to suffer any harm in the future, and Plaintiffs "cannot rely on past injury to satisfy the injury requirement but must show a likelihood that he or she will be injured in the future." *Rolle*, 689 F. App'x at 65. Accordingly, because Plaintiffs fail to establish the requisite harm required for a declaratory judgment, the motion for declaratory judgment is denied.

### C.  Equitable Remedies

Plaintiffs argue that they are entitled to an award that addresses their actual losses and Defendants' inequitable gains and specifically request that the Court award prejudgment and post-judgment interest in order to disgorge Defendants' ill-gotten gains. Doc. 53 at 29–30. However, because the Court has not awarded judgment to Plaintiffs, they are not entitled to prejudgment or post-judgment interest.

### D.  Attorneys' Fees

Plaintiffs argue that they are entitled to attorneys' fees because they are prevailing party since Defendants started to provide payments due the initiation of this action, so the

action materially altered the legal relationship between Plaintiffs and Defendants in a way that is judicially sanctioned.  Doc. 53 at 34–37.  However, because the Court has not awarded judgment to Plaintiffs and the Court has ruled in Defendants' favor, the Court will not award attorneys' fees.

### E. Sanctions[38]

### 1. Legal Standard

A court may *sua sponte* impose sanctions pursuant to its inherent power "to manage [its] own affairs so as to achieve the orderly and expeditious disposition of cases," which includes "disciplin[ing] attorneys who appear before it." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991) (citation omitted).  "[T]he Supreme Court has made clear that courts should impose sanctions pursuant to their inherent authority only in rare circumstances." *Yukos Capital S.A.R.L. v. Feldman*, 977 F.3d 216, 235 (2d Cir. 2020) (citing *Chambers*, 501 U.S. at 44).  In order to *sua sponte* impose sanctions pursuant to courts' inherent power, a court must find "subjective bad faith."  *Muhammad v. Walmart Stores East, L.P.*, 732 F.3d 104, 108 (2d Cir. 2013).  Further, "clear and convincing evidence of bad faith is a prerequisite to an award of sanctions under the court's inherent power." *Yukos Capital*, 977 F.3d at 235.  When a court invokes its inherent power, there is a narrow exception to the bad faith requirement.  *Bao Guo Zhang v. Shun Lee Palace Restaurant, Inc.*, No. 17-cv-00840 (VSB), 2021 WL 634717, at *4 (S.D.N.Y. Feb. 16, 2021).  If the alleged misconduct was not a "conduct of the litigation" or "taken on behalf of a client," a court need not make a specific finding of bad faith in order to impose sanctions.  *International Cards Co., Ltd., v. Mastercard International, Inc.*, No. 13-cv-2576 (LGS), 2017 WL 3575254, at *4 (S.D.N.Y. Aug. 17, 2017) (citing *United States v. Seltzer*, 227 F.3d 36, 41–42 (2d Cir. 2000)).

---

[38] The Court denied a previous motion for sanctions by Plaintiffs on September 13, 2024.  Doc. 66.

2. *Analysis*

Plaintiffs argue that the Court should impose sanctions pursuant to its inherent powers. Doc. 53 at 37. Plaintiffs argue that sanctions are warranted because Defendants (1) "have conceded that there is no defense on the merits," (2) "cannot legitimately claim fiscal shortfalls" when they "have consistently demonstrated their ability to pay," and (3) have "prolonged litigation, causing undue harm to the students." *Id.* at 37–38; Doc. 70 at 17. Defendants argue that (1) they have conducted themselves in good faith, and (2) the DOE "had a legitimate, reasonable, non-frivolous basis to scrutinize payment pursuant to the administrative orders." Doc. 61 at 22. Here, Plaintiffs have not provided sufficient evidence to support a clear and convincing showing of bad faith to merit imposing sanctions. *See Yukos Capital S.A.R.L.*, 977 F.3d at 235. Accordingly, because the Court will not impose sanctions pursuant to its inherent powers, the motion for sanctions is denied.

## III. CONCLUSION

For the reasons set forth above, Plaintiffs' motion is DENIED. The parties are directed to appear for a conference on April 16, 2025 at 11:00 a.m. in Courtroom 619 of the Thurgood Marshall United States Courthouse, 40 Foley Square, New York, NY 10007. The Clerk of Court is respectfully directed to terminate the motion, Doc. 51.


It is SO ORDERED.


Dated:   March 31, 2025
         New York, New York

_____
         EDGARDO RAMOS, U.S.D.J.