UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

C.S., *individually, and as Next Friend to Her Child, Y.S.*, *et al.*

                        Plaintiffs,

– against –

NEW YORK CITY DEPARTMENT OF EDUCATION, THE BOARD OF EDUCATION OF THE CITY SCHOOL DISTRICT OF THE CITY OF NEW YORK, CHANCELLOR DAVID BANKS, *in his official capacity*, *and* THE CITY OF NEW YORK,

                        Defendants.

**OPINION & ORDER**

24-cv-02111 (ER)

RAMOS, D.J.:

      This action was originally brought on behalf of 27 students,[1] each of whom attends the Reach for the Stars ("RFTS") school, against the New York City Department of Education ("DOE"), the Board of Education of the City School District of the City of New York, Chancellor David Banks, in his official capacity, and the City of New York (collectively "Defendants"). The plaintiffs allege, among other things, that Defendants' failure to implement the final administrative orders that were issued in their favor has

---

[1] The 27 students and their parents are C.S., individually, and as Next Friend to Her Child, Y.S., S.G., individually, and as Next Friend to Her Child, S.G., H.C., individually, and as Next Friend to Her Child, A.L., S.S., individually, and as Next Friend to Her Child, A.B., E.S., individually, and as Next Friend to Her Child, J.S., A.I., individually, and as Next Friend to Her Child, T.I., N.K., individually, and as Next Friend to His Child, J.K., R.F., individually, and as Next Friend to Her Child, D.G.F., F.F., individually, and as Next Friend to Her Child, Y.F., Y.A., individually, and as Next Friend to His Child, B.A., Z.A., individually, and as Next Friend to His Child, S.A., S.C., individually, and as Next Friend to Her Child, M.C., E.C., individually, and as Next Friend to His Child, R.C., C.F., individually, and as Next Friend to Her Child, Y.F.2, J.G., individually, and as Next Friend to Her Child, A.G., C.H., individually, and as Next Friend to Her Child, M.H., U.L., individually, and as Next Friend to His Child, M.L., K.E., individually, and as Next Friend to Her Child, G.E., R.G., individually, and as Next Friend to Her Child, S.G.2, L.S., individually, and as Next Friend to Her Child, J.L., M.N., individually, and as Next Friend to His Child, R.N., M.S., individually, and as Next Friend to Her Child, I.S., A.S., individually, and as Next Friend to His Child, E.S., R.S., individually, and as Next Friend to Her Child, D.B.S., V.T., individually, and as Next Friend to Her Child, D.S., Y.M., individually, and as Next Friend to Her Child, Y.T., and H.W., individually, and as Next Friend to Her Child, M.W.

denied the students the educational services to which they were entitled to under the Individuals with Disabilities Education Act ("IDEA") and New York law in violation of 42 U.S.C. § 1983. Doc. 34 ¶¶ 374–87.[2] Two student Plaintiffs remain: D.G.F. and T.I. Before the Court is Defendants' motion for summary judgment on two discrete issues: (1) whether D.G.F. is entitled to tuition payments pursuant to their pendency for the period of July 1, 2022 through September 14, 2022; and (2) whether T.I. is entitled to tuition payments pursuant to their pendency placement for July 6, 2023. Doc. 83. For the reasons stated below, the motion is GRANTED.

## I. BACKGROUND[3]

### A. Factual Background

D.G.F. and T.I.—the two remaining student Plaintiffs—attended RFTS, a private school in Brooklyn, New York that specializes in educating children with autism. Doc. 34 ¶ 65; Doc. 54 ¶ 8; Doc. 83 at 2.

Plaintiffs initiated one or more administrative due process complaints seeking funding for the students' tuition and related transportation services for the parents' unilateral placement at RFTS for the following three school years: 2021-2022, 2022-2023, and 2023-2024. Doc. 83 at 2; Doc. 61 at 6.

Prior to the 2021-2022 school year, RFTS operated pursuant to a tuition-based program, providing services through RFTS-Learning Center ("RFTS-LC"). Doc. 52-4 at 18 n.16.[4] Beginning with the 2021-2022 school year, RFTS switched to a fee for services program, providing services through a different corporate entity, RFTS-Learning

---

[2] The balance of the student Plaintiffs have resolved their claims with Defendants. Doc. 61 at 6. For these students, Defendants do not dispute that they are "entitled to funding for the services at issue according to the terms in the underlying administrative decisions" and explain that the DOE has "fulfilled its payment obligation with respect to each of the underlying administrative orders … issuing nearly $4,000,000 to RFTS in [2024]." Id. at 6–7.

[3] The following facts are drawn from the parties' Rule 56.1 statements, Docs. 54, 62, supporting exhibits, and pleadings, and are undisputed unless noted otherwise.

[4] In their Rule 56.1 statement, Plaintiffs consistently do not distinguish between RFTS-LC and RFTS-LD. See Doc. 54.

and Developing, LLC ("RFTS-LD"). Doc. 52-4 at 18. RFTS' change from a tuition-based program to a fee for services program dramatically increased the tuition at RFTS. *See e.g.*, Doc 52-4 at 17; Doc. 52-6 at 21; Doc. 52-10 at 2; Doc. 52-14 at 11. In fact, the New York State Review Officer ("SRO") noted that the change in structure was accompanied by an "inflated cost of … tuition and billing," which were determined to be so disruptive as to constitute a change in placement. Doc. 60-8 at 24.

Although Plaintiffs did not change schools, Defendants argue that when the parents contracted with RFTS-LD in and after the 2021-2022 school year as a result of the change of the corporate entity operating the school, the parents unilaterally modified students' pendency placements. Doc. 83 at 7.[5]

1. D.G.F.

D.G.F. attended RFTS-LD for the 2022-2023 school year. Doc. 62 ¶ 77. D.G.F.'s tuition for that school year was $368,346. *Id.* ¶ 78. Plaintiffs allege that Defendants owe D.G.F. $76,195.20. *Id.* ¶ 79. Defendants claim that the DOE has paid a total of $292,151.13 based on invoices provided from September 15, 2022 through June 2023. Doc. 62 ¶ 72; *see also* Doc. 83 at 7.

On July 1, 2022, D.G.F.'s parents filed a due process complaint challenging the Individual Education Plan ("IEP") developed by Defendants, alleging a denial of a Free Appropriate Public Education ("FAPE"), and seeking funding at RFTS for the 2022-2023 school year. Doc. 62 ¶¶ 72–73.

On August 31, 2022, Defendants executed a pendency agreement agreeing that D.G.F.'s pendency placement was pursuant to an unappealed finding of fact and decision ("FOFD") dated April 17, 2020. Doc 52-15. The pendency agreement covered twelve months of tuition for RFTS-LC from the date of filing the July 1, 2022 complaint. *Id.*

---

[5] As to D.G.F. and T.I., the parties do not dispute that pendency is currently at RFTS-LD, but dispute what payments are still owed following the Court's Opinion & Order dated March 31, 2025 . Doc. 83 at 2, 7.

On September 15, 2022, Impartial Hearing Officer ("IHO") Susan Barbour issued an FOFD ordering funding for RFTS for the 2021-2022 school year. Doc. 60-11 at 18.[6]

On June 16, 2023, IHO Barbour issued a termination order, noting that D.G.F.'s parents withdrew the July 1, 2022 complaint. Doc. 60-10.

Defendants do not dispute that D.G.F. has pendency at RFTS-LD for the 2022-2023 school year. Doc. 62 ¶ 72. Defendants further explain that the "DOE has paid tuition pursuant to pendency at RFTS-LD, for D.G.F., from September 15, 2022 through June 2023, *in full*." Doc. 83 at 7 (emphasis in original).

2. *T.I.*

T.I. attended RFTS-LD for the 2022-2023 school year. Doc. 62 ¶ 91. T.I.'s tuition for the 2022-2023 school year was $340,727.99. *Id.* ¶ 92. Plaintiffs allege that Defendants owe T.I. $77,749.16. *Id.* ¶ 93. Defendants claim they have paid $339,053.00 in satisfaction of the invoices submitted. Doc. 83 at 8.

On July 7, 2022, T.I.'s parents filed a due process complaint challenging the IEP developed by Defendants, alleging a denial of a FAPE, and seeking funding at RFTS for the 2022-2023 school year. Doc. 62 ¶¶ 81–82.

On October 18, 2022, Defendants executed a pendency agreement agreeing that T.I.'s pendency placement was pursuant to an unappealed FOFD dated April 22, 2022. Doc 52-16. The pendency agreement covered twelve months of tuition for RFTS-LC from the date of filing the July 7, 2022 complaint. *Id.*

On April 5, 2023, IHO Diane Cohen issued a pendency order finding that the last agreed upon placement was RFTS-LC, as set forth in the April 22, 2022 FOFD, and ordering that RFTS-LC's program will constitute T.I.'s program "as of January 20, 2023, and throughout the pendency of these proceedings." *See* Doc. 52-17 at 3.

---

[6] The FOFD refers to the school as RFTS and does not distinguish between RFTS-LD and RFTS-LC. Doc. 60-11.

On August 1, 2023, IHO Cohen issued an FOFD finding that the program at RFTS-LC was inappropriate and denying the request to award tuition funding. Doc. 52-18 at 23. Plaintiffs appealed the IHO's determination to the SRO, and Defendants cross-appealed. Doc. 62 ¶ 88.

On November 17, 2023, SRO Sarah Harrington issued a decision ordering that the August 1, 2023 FOFD "is modified by reversing those portions which found that the unilateral placement of the student at RFTS for the 2022-23 school year was inappropriate for [T.I.], denied the parents' request for district funding of the costs of the unilateral placement," and ordered that "the district shall fund the costs of the student's unilateral placement at RFTS for the 2022-23 school year, in an amount not to exceed $172,300." Doc. 52-19 at 26.[7] SRO Harrington also dismissed Defendants' cross-appeal. *Id.*

The parties do not dispute that T.I. has pendency at RFTS-LD for the 2022-2023 school year. Doc. 62 ¶ 81. Defendants explain that the DOE has fully paid for services invoiced for the 2022-2023 school year, Doc. 83 at 8, whereas Plaintiffs contend that T.I. is entitled to funding for July 6, 2022 even though the due process complaint was filed at 6:16 p.m. that day and pendency began the next day, Doc. 86 at 15.

**B. Procedural History**

On March 20, 2024, Plaintiffs filed a complaint alleging, among other things, that Defendants' failure to implement the final administrative orders that were issued in their favor denied Plaintiffs the education services to which they are entitled under the IDEA and New York law in violation of 42 U.S.C. § 1983. Doc. 1 ¶¶ 147–59. The complaint also requested that the Court issue a preliminary injunction and enter judgment against Defendants. *Id.* at 21–22. That same day, Plaintiffs also filed a corresponding motion for preliminary injunction. Doc. 5.

---

[7] The decision refers to the school as RFTS and does not distinguish between RFTS-LD and RFTS-LC. Doc. 52-19.

On May 13, 2024, Plaintiffs filed an amended complaint, adding additional plaintiffs. Doc. 34. Plaintiffs moved for summary judgment, declaratory judgment, equitable remedies, attorneys' fees, and sanctions on August 1, 2024. Doc. 51.

Plaintiffs then requested a pre-motion conference on September 2, 2024 for the purpose of filing a motion seeking to amend the complaint, the enforcement of unpaid administrative decisions and orders, and move for a permanent injunction requiring Defendants to cease certain practices and pay RFTS's unappealed administrative decisions and orders within thirty days. Doc. 57. A telephonic pre-motion conference was held on September 13, 2024, during which the Court denied the motions for preliminary injunction and sanctions and granted Plaintiffs leave to file a motion to amend the complaint.[8] Doc. 66.

The Court then issued an Opinion and Order denying Plaintiffs' motion for summary judgment, declaratory judgment, equitable remedies, attorneys' fees, and sanctions on March 31, 2025. Doc. 72.

At a conference held on April 22, 2025, Plaintiffs informed the Court of their anticipated request for leave to file a motion for reconsideration of the Court's summary judgment opinion, while acknowledging that the motion would be untimely. They subsequently filed a letter motion for reconsideration on April 23, 2025. Doc. 75. The Court denied Plaintiffs request on May 2, 2025. Doc. 78.

Before the Court is Defendants' motion for summary judgment on two discrete issues: (1) whether D.G.F. is entitled to tuition payments pursuant to their pendency for the period of July 1, 2022 through September 14, 2022; and (2) whether T.I. is entitled to tuition payments pursuant to their pendency placement for July 6, 2023. Doc. 83 at 2. The Court will discuss each in turn below.

---

[8] Plaintiffs informed the Court that they would not file a motion to amend complaint at a conference held on October 16, 2024.

## II. IDEA STATUTORY FRAMEWORK

As explained in the Court's Opinion and Order dated March 31, 2025, Congress passed the IDEA "to ensure that all children with disabilities have available to them a [FAPE] that emphasizes special education and related services designed to meet their unique needs and prepare them for further education, employment, and independent living." 20 U.S.C. § 1400(d)(1)(A). It defines FAPE as "appropriate preschool, elementary school, or secondary school education," "provided at public expense, under public supervision and direction, and without charge," and "in conformity with the [IEP] required under section 1414(d)." *Id.* § 1401(9). The statute further mandates that the FAPE "meet the standards of the State educational agency." *Id.*

As part of a child's FAPE, "the IDEA provides for the creation of an IEP." *Board of Education of Pawling Central School District v. Schutz*, 290 F.3d 476, 481 (2d Cir. 2002). The IEP includes, among other things, "a statement of the child's present levels of academic achievement and functional performance," "a statement of measurable annual goals," and "a description of how the child's progress toward meeting the annual goals … will be measured." 20 U.S.C. § 1414(d)(1)(A)(i). "Congress repeatedly emphasized throughout the Act the importance and indeed the necessity of parental participation in both the development of the IEP and any subsequent assessments of its effectiveness." *Honig v. Doe*, 484 U.S. 305, 311 (1988). As a result, states must allow parents "to seek review of any decisions they think inappropriate." *Id.* at 312.

In addition to imposing the IEP requirement, the IDEA provides for due process procedures to promptly resolve disputes that arise between parents and school districts, so that children will receive appropriate special education services. 20 U.S.C. § 1415(b)(6)-(b)(7). New York State has implemented a two-tiered system of administrative review for disputes regarding "any matter relating to the identification, evaluation or educational placement of a student with a disability ... or the provision of a [FAPE] to such a student." *Id.*; 8 N.Y.C.R.R. § 200.5(i)(1). First, "[p]arents may challenge the adequacy

of their child's IEP in an 'impartial due process hearing' before an IHO appointed by the local board of education." *E.A.M. v. New York City Department of Education*, No. 11-cv-3730 (LAP), 2012 WL 4571794, at *2 (S.D.N.Y. Sept. 29, 2012) (quoting *Gagliardo v. Arlington Central School District*, 489 F.3d 105, 109 (2d Cir. 2007)). Either party may then appeal the IHO's decision to the SRO, an officer of New York State's Board of Education tasked with conducting an impartial review of the proceedings. *Id.*; 34 C.F.R. § 300.514(b)(2); 8 N.Y.C.R.R. § 279.1(d).

### III. LEGAL STANDARD[9]

"The SRO's decision is final[ ] and concludes the state administrative review." *Schutz*, 290 F.3d at 481. "Upon issuance of a final administrative decision, however, a dissatisfied party has the right to bring a civil action in either federal or state court pursuant to the IDEA." *Id.*

"Though the parties in an IDEA action may call the procedure a motion for summary judgment, the procedure is in substance an appeal from an administrative determination, not a summary judgment." *Lillbask ex rel. Mauclaire v. Connecticut Department of Education*, 397 F.3d 77, 83 n.3 (2d Cir. 2005) (alterations and internal quotation marks omitted); *see C.U. v. New York City Department of Education*, 23 F. Supp. 3d 210, 222 (S.D.N.Y. 2014). While an IDEA appeal is in the form of a summary judgment motion, the existence of a genuine issue of material fact will not result in a

---

[9] Previously the Court had stated that it would not consider arguments based on a declaration with exhibits they filed as part of their reply, Doc. 71, because "[i]t is well settled … that an argument [or issue] raised for the first time in a reply brief is waived." *Center for Independence of Disabled, New York v. Metropolitan Transportation Authority*, 2023 WL 5744408, at *6 (S.D.N.Y. Sept. 6, 2023); *see also Jackson Hole Burger, Inc. v. Estate of Galekovic*, 701 F. Supp. 3d 228, 232 (S.D.N.Y. 2023) ("[A]rguments raised for the first time on reply are waived."). In their opposition to Defendants' motion for summary judgment, Plaintiffs argue that this is not a bright line rule, but rather, "that this rule is prudential, not jurisdictional, and that district courts retain discretion to consider such arguments where fairness so requires." Doc. 86 at 13. In urging the Court to reconsider its previous decision, Plaintiffs add that their "reply arguments and exhibits were not 'new' in the forbidden sense" because "[t]hey directly rebutted Defendants' claim that pendency could not attach to RFTS-LD." Doc. 86 at 13. The Court will not consider this argument as to the exhibits since the exhibits it previously decided not to consider are the IEPs and Occupational Therapy Individualized Educational Plan Goals for three student plaintiffs—S.A., R.C., and Y.F.2—none of which are relevant to students D.G.F. and T.I. *See* Docs. 71-1–13.

denial. *J.R. ex rel. S.R. v. Board of Education*, 345 F. Supp. 2d 386, 394 (S.D.N.Y. 2004). Instead, a federal court reviewing an administrative decision under the IDEA bases its decision on an independent review of the record using a "preponderance of the evidence" standard. *Board of Education of Hendrick Hudson Central School District, Westchester County v. Rowley*, 458 U.S. 176, 205 (1982). In reviewing an IDEA action, the Second Circuit has held that "[w]hile federal courts do not simply rubber stamp administrative decisions, they are expected to give due weight to these proceedings, mindful that the judiciary generally lack[s] the specialized knowledge and experience necessary to resolve persistent and difficult questions of educational policy." *Sherman v. Mamaroneck Union Free School District*, 340 F.3d 87, 93 (2d Cir. 2003) (internal quotation marks omitted) (quoting *Walczak v. Florida Union Free School District*, 142 F.3d 119, 129 (2d Cir. 1998)).

A district court must conduct an independent review of the record and exercise its own judgment in deciding whether to grant tuition reimbursement, but it also must give due deference to the decisions of the experts below. *Bettinger v. New York City Board of Education*, No. 06-cv-6889 (PAC), 2007 WL 4208560, at *4 (S.D.N.Y. Nov. 20, 2007). "[C]ourts may not 'substitute their own notions of sound educational policy for those of the school authorities which they review.'" *T.Y. ex rel. T.Y. v. New York City Department of Education*, 584 F.3d 412, 417 (2d Cir. 2009) (quoting *Rowley*, 458 U.S. at 206). Nor may the courts make subjective credibility assessments or weigh the testimony of educational experts when the state authorities have already performed these functions. *M.H. v. New York City Department of Education*, 685 F.3d 217, 240 (2d Cir. 2012). In this way, "the role of the federal courts in reviewing state educational decisions under the IDEA is 'circumscribed.'" *Id.* (quoting *Gagliardo*, 489 F.3d at 112). Generally, either "party aggrieved" by the findings of the SRO "shall have the right to bring a civil action" in either state or federal court. 20 U.S.C. § 1415(i)(2)(A). When such an action is brought in federal district court, the court reviews the records of all of the prior

9

administrative hearings and must hear additional evidence if so requested by either of the parties. *Id.* § 1415(i)(2)(C).

In IDEA proceedings, students have "pendency" or "stay-put" rights. The IDEA provides that, "during the pendency of any proceedings conducted pursuant to this section, unless the State or local educational agency and the parents otherwise agree, the child shall remain in the then-current educational placement of the child." 20 U.S.C. § 1415(j). The purpose of the pendency provision is "to provide stability and consistency in the education of a student with a disability." *Arlington Central School District v. L.P.*, 421 F. Supp. 2d 692, 696 (S.D.N.Y. 2006) (citing *Honig v. Doe*, 484 U.S. 305 (1988)).

## IV. DISCUSSION[10]

The parties do not dispute that pendency for D.G.F. and T.I. is at RFTS-LD, but they disagree on whether any money is owed to each.[11]

### A. D.G.F.

Defendants request summary judgment on D.G.F.'s pendency for the period of July 1, 2022 through September 14, 2022. Doc. 83 at 6–7. Specifically, Defendants argue that the Parents are not entitled to pendency funding for the period beginning on July 1, 2022 and ending on September 14, 2022 because they unilaterally modified pendency by entering into an agreement with RFTS-LD, in violation of *Ventura de*

---

[10] Plaintiffs urge the Court to reconsider its Opinion & Order dated March 31, 2025, Doc. 72, but the Court already denied Plaintiff's motion for leave to file a motion for reconsideration on May 2, 2025. Doc. 78. Accordingly, that section of Plaintiffs' opposition is improper. Doc. 86 at 13–15. *See Buehlman v. Ide Pontiac, Inc.*, 268 F. Supp. 3d 437, 444 (W.D.N.Y. 2017) ("Successive motions for summary judgment are not the proper vehicle for asking the Court to reconsider a prior holding."); *see also Siemens Westinghouse Power Corp. v. Dick Corp.*, 219 F.R.D. 552, 554 (S.D.N.Y. 2004) ("The Court do[es] not approve in general the piecemeal consideration of successive motions for summary judgment because parties ought to be held to the requirement that they present their strongest case for summary judgment when the matter is first raised.").

[11] Plaintiffs argue that *Ventura de Paulino* is inapplicable because here, unlike in *Ventura de Paulino*, Plaintiffs secured pendency agreements and unappealed IHO/SRO orders identifying RFTS as their children's placement. Doc. 86 at 11. Accordingly, they argue, pendency at RFTS was fixed and holding otherwise would constitute a unilateral change. *Id.* However, Defendants do not dispute that pendency was at RFTS—the disagreement is about whether Plaintiffs are entitled to tuition payments pursuant to pendency for D.G.F. for the period of July 1, 2022 through September 14, 2022 even though pendency was modified from RFTS-LC to RFTS-LD.

*Paulino v. New York City Department of Education*, 959 F.3d 519 (2d Cir. 2020). Doc. 83 at 6–7.

"The term 'then-current educational placement' in the stay-put provision typically refers to the child's last agreed-upon educational program before the parent requested a due process hearing to challenge the child's IEP." *Ventura de Paulino v. New York City Department of Education*, 959 F.3d 519, 532 (2d Cir. 2020) (emphasis and citation omitted). To determine a child's "then-current educational placement," Second Circuit courts consider: "(1) the placement described in the child's most recently implemented IEP; (2) the operative placement actually functioning at the time when the stay put provision of the IDEA was invoked; or (3) the placement at the time of the previously implemented IEP." *Doe v. East Lyme Board of Education*, 790 F.3d 440, 452 (2d Cir. 2015) (internal quotation marks and citations omitted).

In addition, according to the plain language of the IDEA, the DOE and parents can "otherwise agree" to modify a student's pendency placement at any time, including during a hearing. 20 U.S.C. § 1415(j); *see Ventura de Paulino*, 959 F.3d at 531. A new agreement will supersede pendency created by an IEP, regardless of whether the agreement is memorialized in a new IEP. *L.P.*, 421 F. Supp. 2d at 697. A final administrative decision in favor of a parent's placement creates a de jure agreement establishing pendency in the final decision. *Schutz*, 290 F.3d at 484; *see also Ventura de Paulino*, 959 F.3d at 532. An IHO's interim order may also serve as the basis of the student's pendency placement in some specific circumstances. *See Avaras v. Clarkstown Central School District*, No. 15-cv-9679 (NSR), 2018 WL 4103494, at *5 (S.D.N.Y. Aug. 28, 2018) (finding that an IHO interim order established the student's last agreed-upon placement under the IDEA).

"Parents who are dissatisfied with their child's education can unilaterally change their child's placement during the pendency of review proceedings and can, for example, pay for private services, including private schooling." *Ventura de Paulino*, 959 F.3d at

11

526 (internal quotation marks and citations omitted). However, the Supreme Court has held that "parents who unilaterally change their child's placement during the pendency of review proceedings, without the consent of state or local school officials, do so at their own financial risk." *School Committee of Town of Burlington, Massachusetts v. Department of Education of Massachusetts*, 471 U.S. 359, 373–74 (1985). After the IEP dispute is resolved, parents may obtain "retroactive reimbursement" from the school district if: "(1) the school district's proposed placement violated the IDEA by, for example, denying a FAPE to the student because the IEP was inadequate; (2) the parents' alternative private placement was appropriate; and (3) equitable considerations favor reimbursement." *Ventura de Paulino*, 959 F.3d at 526–27 (citation and internal quotation marks omitted).

As Plaintiffs note, pendency "does not guarantee a disabled child the right to remain in the exact same school with *the exact same service providers*," but rather the "same general level and type of services." *T.M. ex rel. A.M. v. Cornwall Central School District*, 752 F.3d 145, 171 (2d Cir. 2014) (emphasis added).

Here, Plaintiffs claim that D.G.F. is entitled to pendency payments for RFTS-LD for the period of July 1, 2022 through September 14, 2022. Doc. 86 at 28. Defendants do not dispute that pendency transferred from to RFTS-LC to RFTS-LD on September 15, 2022, Doc. 60-11, but they argue that D.G.F.'s "then-current pendency placement was unequivocally RFTS-LC," and, as such, D.G.F. is not entitled to pendency payments for the period of July 1, 2022 through September 14, 2022. Doc. 83 at 7. Defendants add that they "paid tuition pursuant to pendency at RFTS-LD, for D.G.F., from September 15, 2022 through June 2023, *in full*," and that they, therefore, do not have any outstanding obligations. *Id.* at 7 (emphasis in original).

Plaintiffs argue that "[t]o apply *Ventura* [*de Paulino*] here would turn pendency into a trap, allowing Defendants to avoid funding whenever a school changes its tax structure or billing mechanisms." Doc. 86 at 10. Plaintiffs further assert that *Ventura de*

*Paulino* is distinguishable because there, the "parents unilaterally transferred their children to entirely different schools and then sought to compel district funding of the new placements under pendency." *Id.* at 11 (citing *Ventura de Paulino*, 959 F.3d at 534–35).

Here, by contrast, D.G.F. remained in the same school, and IHOs determined that "[n]o evidence was presented that the type of education provided by [RFTS] changed, when it changed its billing model." Doc. 52-3 at 6. As Plaintiffs point out, the "children remained in the same classrooms, with the same teachers, therapists, curriculum, and related services before and after RFTS altered its billing structure." Doc. 86 at 9. The only aspect that changed was RFTS's billing mechanism. Doc. 86 at 9–10. Accordingly, they argue that DG.F.'s parents are owed pendency funding for the period beginning on July 1, 2022 and ending on September 14, 2022.

Defendants argue that, in accordance with the Court's Opinion and Order dated March 31, 2025, students' "pendency placement changed when the parents unilaterally contracted with RFTS-LD for a services-based program at a substantially higher cost than [students'] prior program delivered by RFTS-LC." Doc. 72 at 21; *see also* Doc. 88 at 2 n.1. Specifically, Defendants argue that RFTS's corporate bifurcation and the corresponding increase in costs in the contracts that parents entered into with RFTS-LD amounted to a unilateral change in pendency. Doc. 88 at 2–3; *see also* SRO Decision No. 23-151, dated September 20, 2023, Doc. 60-8 at 24 (noting the change in structure was accompanied by an "inflated cost of tuition and billing practices employed by RFTS-LD," which were determined to be so disruptive as to constitute a change in placement).

The Court maintains that parents cannot unilaterally modify pendency, and significant increases in the cost of tuition constitute changes in pendency even when the children remain in the same school. *Ventura de Paulino*, 959 F.3d at 533–35 (noting that "[d]ramatically different costs may be presented when parents unilaterally choose to enroll their child in a new school.").

13

Plaintiffs also argue that even if the Court agrees with Defendants' reading of *Ventura de Paulino*, the equities demand allowing parents to receive pendency funding in cases where denial of funding was "based solely on a school's internal reorganization." Doc. 86 at 12. However, the equities also require that the party responsible for paying for the students' education be able to determine how the pendency services are to be provided, especially given that educational costs can vary dramatically. *Ventura de Paulino*, 959 F.3d at 535. And, as Defendants point out, since Plaintiffs noted that nothing about the children's education changed—only the school's billing structure—RFTS's increase in costs seems unjustified. Doc. 88 at 4.

The Court finds that there is no genuine issue of material fact as to whether the change in corporate structure from RFTS-LC to RFTS-LD constitutes the type of unilateral modification that the Second Circuit has determined warrants denial of Plaintiffs' demand for reimbursement. Accordingly, Defendant's motion is GRANTED as to D.G.F.

**B.  T.I.**

The second issue is narrow: whether T.I. is entitled to funding for July 6, 2023 even though the due process complaint was filed at 6:16 p.m. that day. The Second Circuit has held that "the [stay-put] statute is clear that the [agency's] obligation to provide stay-put services [is] not triggered until the Parent's administrative complaint [is] filed." *E. Lyme Board of Education*, 790 F.3d at 456. Accordingly, the Court finds that there is no genuine issue of material fact as to T.I.'s pendency starting on July 7, 2022.

Defendants argue that the discrepancy in the amount they have paid for T.I.'s education versus what Plaintiffs claim they are owed can be reduced to Plaintiff's accounting error. Doc. 83 at 8. Specifically, Defendants assert that T.I.'s pendency commenced on July 7, 2022 given that Plaintiffs filed the relevant due process complaint on July 6, 2022 at 6:16pm—after business hours—and was not docketed until the next day. *Id.* Defendants conclude that Plaintiffs are not entitled to payment for July 6, 2022

and, accordingly, as to T.I., they have made full payment for services invoiced for 2022-2023 school year. *Id.*

Plaintiffs, on the other hand, argue that Defendants still owe them $1,674.99, which is the funding amount for one day, July 6, 2023.[12]  Doc. 86 at 17–18.  Plaintiffs then offer a series of rulemaking arguments—including that the DOE did not identify a formal rule establishing this next-day treatment as required by the New York State Administrative Procedure Act, that agencies cannot create procedural requirements not found in statutes, and that the absence of clear notice violates Due Process—as well as equity arguments—including that even a one-day delay is substantial and hypothetical scenarios in which due process complaints made after 5p.m. on a Friday have the potential to delay pendency through the weekend.  *Id.* at 15–28.  For example, Plaintiffs assert that "DOE's practice of treating due process complaints filed after 5:00 pm as filed the next business day represents an unauthorized restriction on federal rights."  *Id.* at 16.

Plaintiffs rely on *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369 (2024) to argue that the DOE's next-day rule must necessarily fail because of the heightened scrutiny to which agency interpretations are now held.  Doc. 86 at 18–19.  In *Loper*, the Supreme Court held that the "Administrative Procedure Act requires courts to exercise their independent judgment in deciding whether an agency has acted within its statutory authority" instead of deferring to agency interpretation when a statute is ambiguous.  603 U.S. at 369.  Plaintiffs argue that, in accordance with *Loper,* the DOE's next-day rule is impermissible since IDEA's text provides no authorization for timing restrictions beyond those explicitly stated, and no such authorization exists "to treat after-hours electronic filings as next-day submissions."  Doc. 86 at 19.

Defendants assert that Plaintiffs' reliance on *Loper* is misplaced, as the key fact remains the same:  the event initiating pendency at RFTS-LD—filing the due process

---

[12] To date, Defendants have paid $339,053.00 in satisfaction of the invoices submitted for T.I., but Plaintiffs allege that they were owed $340,727.99.  Doc. 83 at 8.

15

complaint—occurred after T.I.'s school day had ended. Doc. 88 at 6. Defendants also add that "upon information and belief, if school is not in session at the time that the [due process complaint] is filed, whether or not DOE recognizes pendency as having commenced has no immediate bearing on the student's receipt of services by virtue of the very fact that school is closed." Doc. 88 at 7.

Given the above, the Court finds that there is no genuine issue of material fact that T.I.'s pendency commenced on July 7, 2022. Plaintiffs are not entitled to payment for July 6, 2022 given that the due process complaint was filed after school hours on July 6, 2022. *de Paulino v. New York City Department of Education*, No. 22-cv-1865 (PAE), 2024 WL 3046025, at *5 (S.D.N.Y. June 18, 2024) (determining that a complaint that was emailed to the IHO at 6:57 p.m. on July 7, 2021 did not trigger DOE's pendency obligations until July 8, 2021). Accordingly, Defendants motion for summary judgment is GRANTED as to T.I.'s claim.

V.    **CONCLUSION**

For the reasons set forth above, Defendants' motion is GRANTED. The Clerk of Court is respectfully directed to terminate the motions, Docs. 82, 87, 89, and close the case.

It is SO ORDERED.

Dated:    November 19, 2025
          New York, New York

                                                  _____
                                                  EDGARDO RAMOS, U.S.D.J.